IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RICHAUNA OKOJIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:19-cv-00654 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| METROPOLITAN NASHVILLE | ) | |
| HOSPITAL AUTHORITY d/b/a | ) | |
| NASHVILLE GENERAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 22, "Motion"). Plaintiff has responded. (Doc. No. 26). Defendant has replied. (Doc. No. 32). Additionally, Defendant has filed a Motion to Strike (Doc. No. 34, "Motion to Strike"), which seeks to strike Plaintiff's unsworn declaration (Doc. No. 31-7), which serves as the entire basis for Plaintiff's Additional Statement of Undisputed Facts (Doc. No. 29). Plaintiff has responded to the Motion to Strike. (Doc. No. 36). Both motions are ripe for review.

For the reasons discussed herein, the Court will grant the Motion. The Court will deny the Motion to Strike.

# FACTUAL BACKGROUND[1]

Plaintiff, who is Black, (Doc. No. 31-6 at 67), has worked for Defendant Metropolitan

Nashville Hospital Authority as an Emergency Room Registrar since April of 2012.[2] (Doc. No. 27

at ¶ 1). On or around March 3, 2018, Plaintiff was working at the registration desk when a Black[3]

man came into the Emergency Room experiencing chest pain. (Doc. No. 31-6 at 15-18, 77).[4] This

---

[1] Unless otherwise noted, the facts in this section are taken from facts in Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. No. 27) and Defendant's Response to Plaintiff's Statement of Facts (Doc. No. 33). Unless indicated otherwise, the facts set forth in this section are undisputed. Thus, the facts set forth herein are either undisputed or specifically identified as disputed.

    Additionally, the Court must make some observations about several of Plaintiff's denials in her Response to Defendant's Statement of Undisputed Facts. First, in interpreting Plaintiff's denials of Defendant's statement nos. 4, 11, and 13, (Doc. No. 27 at ¶¶ 2, 3, 4), the Court construes Plaintiff as intending to have inserted a period after the first word of the response, "Denied"; if such responses are read without a period, each response would have an entirely different meaning that appears unlikely to be what Plaintiff intended. Second, it seems clear that Plaintiff's response to statement no. 4 is a response to something other than the alleged fact Defendant posited there; Plaintiff's basis for denying no. 4 makes no sense considering the nature of the alleged fact Defendant posited. Accordingly, the denial is not effective, and the alleged fact asserted at statement no. 4 by Defendant is deemed admitted.

    Additionally, the Court herein relies on certain facts set forth in the parties' respective briefing. The parties rely respectively on numerous facts set forth in their respective briefs (mainly the Memorandum in Support of the Motion (Doc. No. 23) and the Response (Doc. No. 26)). As for the facts relied on herein by the Court, they have been shown to be supported by the record and appear uncontested. Therefore, the Court has included such facts in both this section and its discussion where relevant, and when doing so has cited the relevant briefing that asserted such facts.

[2] Plaintiff is responsible for verifying insurance, registering patients, and admitting patients to the hospital. (Doc. No. 23 at 3). Plaintiff is not a nurse or a health care provider. (*Id.*).

[3] The patient is, in different places in the briefing, referred to variously as "African," "black," and "Black African." (*E.g.*, Doc. No. 26 at 1, 3). As it seems that the patient may not have been an African *American* individual (as Plaintiff is), the Court will refer herein to the patient (and Plaintiff) as being "Black."

[4] All facts included in this section that the Court supports by citation to Plaintiff's deposition transcript (Doc. No. 31-6) were included in Defendant's Memorandum in Support of its Motion for Summary Judgment (Doc. No. 23). Accordingly, the Court finds these particular cited facts—

man was admitted as a patient and later passed away from blood clots. (*Id.* at 15-19). The next day, Plaintiff complained to three individuals regarding her perception that the patient's care was inappropriately delayed. (*Id.* at 19-21). Plaintiff believes that after she voiced her concerns over how the patient's care was handled, she began experiencing harassment from several white nurses. (*Id.* at 25, 66).

In her Response to Defendant's Statement of Undisputed Facts, Plaintiff agrees that it is undisputed that she believes that the following individuals harassed her between March and September of 2018: Sherry Miller-Brown,[5] Ashley Midkiff, Lila Homan, Carla Vining, and Lori Hall. (Doc. No. 27 at ¶ 2). She contends, more specifically, that Miller-Brown harassed Plaintiff five times in particular,[6] (*id.* at ¶ 5), that Midkiff harassed Plaintiff four times in particular, (*id.* at ¶ 6), and that Homan, Vining, and Hall each harassed Plaintiff once. (*Id.* at ¶ 8). In her Response, Plaintiff then refers to additional individuals and instances of harassment (discussed below).

---

asserted by Plaintiff at her deposition and accepted by Defendant—to be undisputed. They are included here to provide relevant context that was not provided in the Statement of Undisputed Facts.

[5] At points throughout briefing, Miller-Brown is sometimes referred to as just "Brown."

[6] In response to Defendant's statement that "[a]ccording to Plaintiff, Miller-Brown harassed her [Plaintiff] five times," Plaintiff states: "Denied. Sherry Brown made comments about race in a joking manner." (Doc. No. 27 at ¶ 5). This denial could be interpreted as either 1) a denial that Plaintiff contends Miller-Brown harassed her specifically five times (no more and no less), or 2) a clarification as to the nature of the harassment, without denying that Plaintiff contends that Miller-Brown harassed Plaintiff five times (presumably meaning "on five different occasions"). Because Plaintiff does not, in her response here, state that Miller-Brown harassed her more than five times or fewer than five times, the Court construes Plaintiff's response not to deny the fact that she was harassed by Miller-Brown (precisely) five times, but rather to explain that Miller-Brown's harassment came in the form of comments about race made in a joking manner.

Ultimately, both parties seem to agree that the following incidents (the dates of which the Court provides where possible) undisputedly occurred, as described in Defendant's Memorandum in Support of its Motion:[7]

---

[7] In an additional alleged incident, the occurrence of which *is* disputed, Miller-Brown falsely accused Plaintiff of throwing chairs in late March of 2018. (Doc. No. 23 at 5 n.4). More specifically, Plaintiff alleges that Miller-Brown made this false accusation to Plaintiff's supervisor, Ian McAuley. (*Id.*) But it is important to note Plaintiff's source as to this alleged occurrence; according to Plaintiff, another employee told her that Miller-Brown made this false accusation against Plaintiff. (*Id.*) In other words, Plaintiff did not have any personal knowledge of this event, and she believes that McAuley told another employee (who in turn told Plaintiff) what Miller-Brown had said to McAuley. Defendant contests the Court's consideration of Miller-Brown's statement because (according to Defendant) it is hearsay. (*Id.*). Defendant is off the mark, having made the all-too-common mistake of confusing a valid hearsay objection with a valid objection to lack of personal knowledge. (Defendant does allude here to Plaintiff's lack of personal knowledge, but the sole stated basis for the objection is hearsay). True, under the so-called "hearsay rule," hearsay generally is inadmissible at trial. Fed. R. Evid. 802. Likewise, generally, "hearsay evidence cannot be considered on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). But hearsay, of course, is an out-of-court statement (except of the kind described in Rule 801(d)) *offered to prove the truth of the matter asserted in the statement*. Fed. R. Evid. 801(c) (emphasis added). It is entirely clear that Plaintiff offers Miller-Brown's statement (that Plaintiff threw chairs) not for that purpose, but rather for the exact opposite purpose—*i.e.*, that the statement was *false* (and as another example of Plaintiff being harassed and treated unfairly). In other words, the statement is not offered to prove what is asserted in the statement (that Plaintiff threw chairs) but rather for the fact that Miller Brown made the statement even though the assertion therein is *not true.* So the hearsay objection falls flat. But ultimately the statement nevertheless is inadmissible because (as Defendant indicated but did not explicitly press as grounds for exclusion) Plaintiff lacks personal knowledge of Miller-Brown making this statement. And so the Court will exclude this statement (or, more precisely, Plaintiff's testimony about the statement) under Fed. R. Evid. 602. In any event, as discussed below, the Court would not find that this statement was racially motivated or that it supports Plaintiff's claim for a hostile work environment based on race.

Additionally, the Court notes that this is Defendant's only objection to Plaintiff's proffered evidence based on hearsay, and any other objection to hearsay has been waived because Defendant did not make it. "If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived . . ." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); s*ee e.g.*, *Moore v. City of Memphis*, 175 F. Supp. 3d 915, 929 (W.D. Tenn. 2016), *aff'd*, 853 F.3d 866 (6th Cir. 2017) (finding hearsay objection waived when no argument was provided); *Brady v. City of Westland*, 1 F. Supp. 3d 729, 732 n.3 (E.D. Mich. 2014) ("Indeed, Plaintiff not only failed to raise any hearsay concerns or other evidentiary objections with respect to the police reports, but she explicitly relied on the reports of the Westland officers as the basis for her counter-statement of facts in her responses to

- Miller-Brown, with her hands on her hips, told Plaintiff "I'm going to harass you" (March 2018);

- Miller-Brown "walked up on her" (*i.e.*, walked toward Plaintiff while staring at her without saying anything, before walking away, which Plaintiff perceived as intimidation) (summer 2018);

- Miller-Brown "stared her down" (July 14, 2018);

- Miller-Brown told another nurse "let me be up there" while referring to Plaintiff's desk (late July 2018);

- Midkiff falsely accused Plaintiff of giving a patient her phone number;

- Midkiff "stared at her" while going to the vending machine;

- Midkiff anonymously reported Plaintiff as "unprofessional," "loud," and "ghetto" (May 2018);

- Midkiff anonymously reported that Plaintiff "likes to get high" (May 2018);

- Homan complained that Plaintiff barged into a patient's room (May 2018);

- Vining told Plaintiff that the Director of Nursing was on vacation and "didn't want to come back to any complaints" (summer 2018);

- Hall stared at Plaintiff five or six times.

(Doc. No. 23 at 6–8, 15–16).

---

Defendants' motions. Accordingly, Plaintiff is in no position to complain about the Court's consideration of the police reports . . ."); *Fish Farms P'ship v. Winston-Weaver Co. Inc.*, No. 2:09-CV-163, 2012 WL 5877967, at *4 (E.D. Tenn. Nov. 20, 2012), *aff'd*, 531 F. App'x 711 (6th Cir. 2013) ("It is again noted that plaintiff has made no effort to address the hearsay issue, and the issue is deemed waived.").

  Finally, the Court notes that in any event, Defendant concedes in its Response to Plaintiff's Statement of Facts that it "does not dispute that, sometime in March 2018, Miller-Brown reported to [Defendant] that Plaintiff was throwing chairs in the lobby" and that Defendant "does not dispute Plaintiff's assertion that Miller-Brown's allegation was untrue for summary judgment purposes." (Doc. No. 33 at 5).

In her Response, Plaintiff includes the following additional incidents that also appear to be undisputed:[8]

- Midkiff sang "You got in trouble" after Plaintiff was spoken to by supervisors about leaving food in a cabinet in the triage area;

- Plaintiff's supervisor informed Plaintiff that she was accused of telling a patient she got high once a week, and Plaintiff had to take a urine drug test and breathalyzer test;

- Plaintiff was given the following anonymous note—which the Court quotes as it was written, including its use of an especially offensive word and poor grammar—in an employee access-only breakroom:

    Everyone know it was you did the anonymous complaint about the African man that died but you are dumb. You see nothing came of it and nothing will. You are not a nurse and he died from blood clots you stupid black cunt. You would no that if you were medical but youre not so back off. Be careful with the shit youre stirring up so you don't endup like the African man.

(Doc. No. 26 at 12–13).

On June 4, 2018, Plaintiff complained of three incidents of harassment (Midkiff's comment about Plaintiff giving out her phone number, the accusation that Plaintiff used drugs, and Miller-Brown's statement (threat) that she would harass Plaintiff) to Steve Kennedy, then-Human Resources Business Partner. (Doc. No. 27 at ¶ 9; Doc. No. 31-2 at 4–6).

Plaintiff and Defendant do not agree regarding the exact time period when the alleged harassment took place.[9] However, it appears undisputed that the period during which the alleged harassment took place spanned eight months or less. Following a later e-mail correspondence

---

[8] Plaintiff also indicates that the Black patient dying was an action of harassment towards her. (Doc. No. 26 at 11). The Court will discuss Plaintiff's theory regarding Defendant's alleged harassment of all Black individuals below.

[9] Plaintiff states that the alleged harassment occurred over an 8-month period. (Doc. No. 26 at 14). Defendant states that the alleged harassment occurred over a 6-month period. (Doc. No. 23 at 16).

between Plaintiff and Kennedy, from Plaintiff's perspective, after September 2018 things "kind of wrapped up," and Plaintiff had no "major" problems that she felt like she needed to notify Defendant about. (Doc. No. 27 at ¶ 14).

The Complaint asserts claims of (1) a hostile work environment based on race under Title VII of the Civil Rights Act of 1964 (Count I), and (2) a hostile work environment based on race under the Tennessee Human Rights Act (Count II). (Doc. No. 1 at ¶¶ 41-49).[10]

## DISCUSSION

The Court will first discuss the Motion to Strike in order to determine what evidence it can appropriately consider when ruling on the Motion. The Court will then proceed to discuss the Motion and Defendant's arguments regarding why summary judgment should be granted.

A. Motion to Strike[11]

In support of its Motion to Strike, Defendant argues that the Court should strike Plaintiff's declaration (Doc. No. 31-7) (upon which Plaintiff's Additional Statement of Undisputed Facts relies) from the record. (Doc. No. 35). Plaintiff argues that the declaration should not be stricken from the record. (Doc. No. 36).

---

[10] In her Complaint, Plaintiff appears to mention a claim of race discrimination. (Doc. No. 1 at ¶ 1). However, as the phrase "race discrimination" is not mentioned outside of a solitary reference in the Complaint, is not listed among the claims Plaintiff brings, and is not referenced in any of the summary judgment briefing, the Court believes this to be a scrivener's error wherein Plaintiff meant to say that she was bringing hostile work environment claims based on race.

[11] The Court notes that in response to the Motion to Strike, Plaintiff complains that Defendant has "partially submitted" Plaintiff's deposition transcript, and "[a]bout 45% of the deposition transcript is missing from the court record" making it "disingenuous for the Defendant to argue that the affidavit is a sham[.]" (Doc. No. 36 at 1–2). The Court notes that it is common for parties to file partial versions of deposition transcripts with only the relevant portions included for the Court to review. Additionally, the Court notes that Plaintiff herself submitted only a partial version of her deposition in response to the Motion. (Doc. No. 31-6). Moreover, Plaintiff of course was free to file whatever additional parts of the transcript she wished in order to counter any alleged misimpression supposedly created by Defendant cherry-picking certain parts of the transcript.

The Sixth Circuit has explained that:

[A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.' A useful starting point for this inquiry is the nonexhaustive list of factors articulated by the Tenth Circuit in *Franks*, where the court noted that the existence of a sham fact issue turns on 'whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain.'

*Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908–09 (6th Cir. 2006) (citations omitted).

"Not every post-deposition affidavit or declaration is prohibited, however. Rather, a distinction must be made between legitimate efforts to supplement or clarify the record, and attempts to create sham issues to stave off summary judgment and force an unnecessary trial." *Cossairt v. Jarrett Builders, Inc.*, 292 F. Supp. 3d 779, 782 (M.D. Tenn. 2018).

After a review of the contested declaration, the Court finds that many of the statements therein are either supported by Plaintiff's deposition or provide additional information that is not refuted by the deposition. The Court finds that it can consider these statements for purposes of evaluating the Motion. On the other hand, the Court finds that there are several statements related to employer liability that are not relevant to the resolution of the Motion, as the Court necessarily focuses its analysis on whether the conduct was severe or pervasive (and does not reach the issue of employer liability). The Court is aware of no statements in the declaration that directly contradict the deposition that are relevant to the analysis below.[12]

---

[12] The Court perceives that the closest thing to a contradictory statement in the declaration is Plaintiff's unqualified statement that "Ashley Midkiff complained that . . . I was acting 'ghetto.'"

Therefore, the Court will deny the Motion to Strike and will consider (and give appropriate weight to) the statements in the declaration to the extent they are relevant and otherwise admissible under the Federal Rules of Evidence.[13]

---

(Doc. No. 31-7 at ¶ 10). This arguably differs from Plaintiff's testimony at her deposition on this point, because such testimony suggested that she did not know for sure that it was Midkiff who made this (anonymous) complaint. (Doc. No. 24-1 at 45–46). But this isn't much of a difference. In both places, Plaintiff asserts that it was Midkiff, and while Plaintiff's deposition testimony may indicate that she is not (and cannot reasonably be) sure, it also reveals that she asserts (as she did in her declaration) that she maintains that it was Midkiff for the particular reasons stated at her deposition.

Regarding Plaintiff's assertion that the complainant was Midkiff, Defendant writes, "While Plaintiff claims Midkiff filed a complaint against her that referred to Plaintiff as 'ghetto,' Plaintiff admits the Q-Statim [*i.e.*, the complaint, which was submitted via "Q-Statim," a mechanism for anonymously reporting safety concerns] was anonymous and that she cannot say for sure that Midkiff filed it. This is not sufficient to attribute the statement to Midkiff." (Doc. No. 23 at 13) (citation omitted). But Defendant ignores the fact that Plaintiff did testify to a particular basis (of which she would have had personal knowledge) for believing that it must have been Midkiff. (Doc. No. 24-1 at 45–46). Although a jury would not be required to draw the inference that the anonymous complainant must have been Midkiff, a jury would be permitted to do so based on Plaintiff's testimony. Construing the evidence in Plaintiff's favor as required, and also considering the Sixth Circuit case law set forth in the following footnote, the Court finds (arguendo) for purposes of the Motion that Midkiff made the complaint as Plaintiff alleges.

However, the Court notes that although Defendant makes an issue out of whether Plaintiff can establish that Midkiff made this complaint, Defendant has not made any argument as to why the resolution of that issue is material, or indicated why it would help Defendant's position if the complainant's identity was treated as unknown rather than being attributed to Midkiff.

[13] However, as will be discussed below, the Court does find that it cannot consider several of the statements in the Declaration for other reasons, such as the fact that they are mere statements of Plaintiff's speculative belief. On the other hand, the Court is not persuaded by Defendant's citation to *Hines v. The Sherwin-Williams Co.*, No. 96 C 4889, 1999 WL 1267697, at *6 (N.D. Ill. Mar. 31, 1999), for the assertion that "[s]elf-serving uncorroborated assertions are not evidence of a hostile work environment." (Doc. No. 23 at 13). As the undersigned has recently explained:

> Some district courts have indicated that the presentation of only self-serving statements by a plaintiff is insufficient to survive summary judgment. *E.g.*, *Gooden v. Ryan's Rest. Grp., Inc.*, No. 5:04CV179R, 2007 WL 855326, at *7 n.5 (W.D. Ky. Mar. 14, 2007) (noting, but not basing its ruling on, case law in other circuits that a plaintiff in a Title VII case cannot solely rely on self-serving testimony, and stating "[u]nder summary judgment, the Court merely decides, as a matter of law, whether a jury could reasonably conclude that the evidence presented is credible"); *Young v. United Parcel Serv., Inc.*, 992 F. Supp. 2d 817, 830 (M.D. Tenn. 2014)

("As an initial matter, [Plaintiff's] self-serving testimony is the only evidence that Simmons made such a statement. Such self-serving and conclusory allegations are insufficient to overcome a motion for summary judgment."); *Morris v. Mary Rutan Hosp. Ass'n*, No. 2:18-CV-543, 2020 WL 5943022, at *7 (S.D. Ohio Oct. 7, 2020) ("Plaintiff's self-serving testimony is the only evidence he offers to suggest that he was unfairly treated because of his age; he offers no statements from others that suggest that his age was a factor in the decision to impose additional requirements on him. Such self-serving and conclusory allegations are insufficient to overcome a motion for summary judgment.").

Despite this line of cases, the Sixth Circuit recently stated:

> That evidence, we note, consists wholly of self-serving statements. Sometimes, evidence of that nature might not be sufficient to survive summary judgment. For instance, where self-serving testimony is blatantly and demonstrably false, it understandably may not create a genuine issue of material fact, thereby allowing a court to grant summary judgment. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007) (holding that a court, when determining whether there is a genuine dispute of material fact in a case, may ignore testimonial evidence when it is "blatantly contradicted" by video evidence); *see also CenTra, Inc. v. Estrin*, 538 F.3d 402, 419 (6th Cir. 2008) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989) (assuming as true on summary judgment the nonmoving party's version of events unless that version is "totally implausible")). But nothing in the record leads us to the conclusion that Davis's claim that Gallagher planted the drugs is demonstrably false or totally implausible. Although perhaps not as strong as some other evidence might be, self-serving statements can create a genuine dispute of material fact to be resolved at trial. That appears to be the case here.

*Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020); *see also Robinson v. Brege*, No. 1:20-CV- 449, 2021 WL 1092638, at *2 n.1 (W.D. Mich. Mar. 5, 2021), *report and recommendation adopted*, No. 1:20-CV-449, 2021 WL 1091551 (W.D. Mich. Mar. 22, 2021) (rejecting argument that plaintiff's evidence should not be considered and noting that "labeling a party's testimony self-serving, absent, for example, prior contradictory deposition testimony, is an argument without traction, as testimony by a party is inherently self-serving" (relying on *Davis*)); *Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 455 (6th Cir. 2004) (considering plaintiff's testimony, which was the only evidence, regarding the use of the "n-word").

Defendant has also not argued that Plaintiffs' testimony is not credible. This Court has previously found in a similar factual context that "[Defendant] maintains that [Plaintiff] has presented 'no evidence' other than 'self-serving testimony' to

B.  <u>Motion for Summary Judgment</u>

    1. **Hostile Work Environment**

Plaintiff brings a claim for hostile work environment based on race under Title VII and under the THRA. A hostile work environment claim is analyzed using the same standards under both statutes, so the Court need conduct only one analysis. *Theus v. GlaxoSmithKline*, 452 F. App'x 596, 600 (6th Cir. 2011); *Allen v. Cumberland Med. Ctr., Inc.*, No. 2:10-CV-0045, 2010 WL 3825667, at *3 (M.D. Tenn. Sept. 24, 2010); *Austin v. Alexander*, 439 F. Supp. 3d 1019, 1024

---

support his pretext argument. The court disagrees, particularly where the same could be said of the defendants' evidence, which largely consists of self-serving testimony by the supervisors whom [Plaintiff] now accuses of misconduct. [The Court will view] the facts in the light most favorable to [Plaintiff] and resolving factual disputes in his favor[.]" *Foreman v. Five Star Food Serv., Inc.*, 950 F. Supp. 2d 958, 976 (M.D. Tenn. 2013), *order vacated in part on other grounds on reconsideration*, No. 3:11-CV- 01124, 2013 WL 5675899 (M.D. Tenn. Oct. 18, 2013) (vacating part of previous ruling upon presentation of new evidence by movant); *see also Pendleton*, 2016 WL 2927983, at *10 (rejecting Defendant's argument that plaintiff's unsubstantiated statement should not be considered on summary judgment) (discussing *Johnson*) . . .

   That is to say, "[on motion for] summary judgment, the Court merely decides, as a matter of law, whether a jury could reasonably conclude that the evidence presented is credible." *Gooden*, 2007 WL 855326, at *7. In so doing, the Court keeps in mind that even unsupported and self- serving statements can be credible under certain circumstances, although "[t]he Court views self- serving testimony opposing a motion for summary judgment with scrutiny when it is unsupported by additional evidence." *Johnson v. Buddy's Bar-B-Q, Inc.*, No. 1:13-CV-254, 2015 WL 1954454, at *5 (E.D. Tenn. Apr. 29, 2015).

*Jordan v. Mathews Nissan, Inc.*, No. 3:18-CV-01233, 2021 WL 1967562, at *20 n.40 (M.D. Tenn. May 17, 2021) (Richardson, J.). Likewise, Defendant here has not attacked Plaintiff's credibility, and instead merely argues that the Court should not accept alleged facts that are supported only by Plaintiff's testimony. Based on the recent Sixth Circuit precedent discussed above, the Court finds that it should consider such statements (if made based on personal knowledge as required by Fed. R. Evid. 602) even if unsupported by additional evidence—although it may apply some additional scrutiny to the statements when they are entirely unsupported by other evidence in the record.

(M.D. Tenn. 2020).[14] Defendant argues that 1) the conduct Plaintiff complains of is not based on her race, 2) Plaintiff was not subject to severe and pervasive harassment, and 3) Plaintiff cannot prove employer liability.[15]

---

[14] The THRA provides a state remedy for race discrimination. The statute states "[i]t is a discriminatory practice for an employer to: (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin . . . ." Tenn. Code Ann. § 4-21-401(a)(1). Though this is a state law, courts apply the same principles as they would to a claim brought under Title VII or 42 U.S.C. § 1981. *See e.g.*, *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996) ("The stated purpose and intent of the T[HRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws. Accordingly, our analysis of the issues in this appeal is the same under both the Tennessee Human Rights Act and Title VII of the Federal Civil Rights Act." (internal citations omitted)). It is true that the THRA is broader than Title VII in some respects, *Walton v. Interstate Warehousing, Inc.*, No. 3:17-cv-1324, 2020 WL 1640440, at *5 (M.D. Tenn. Apr. 2, 2020), but not any that are relevant to the analysis in this case.

[15] Defendant also argues that Plaintiff has not shown that her job performance has been affected by the conduct of which she complains. (Doc. No. 23 at 18). However, element four of the indirect-evidence *prima facie* case, though often phrased as "the harassment unreasonably interfered with her work performance *and* created a hostile work environment," is analyzed under the totality of the circumstances and thus does not require specifically that a plaintiff show that his or her work performance suffered. *Kasprzak v. DaimlerChrysler Corp.*, 395 F. Supp. 2d 636, 641 (N.D. Ohio 2005) ("Plaintiff need not show specifically that her work performance suffered."); *Pendleton*, 2016 WL 2927983, at *10 (not considering whether the plaintiff's work performance had been negatively impacted and finding that a plaintiff's testimony that they were subject to unwanted racial harassment by a supervisor was sufficient to raise a genuine issue of material fact as to prong number four of the *prima facie* case of a hostile work environment claim); *see also Bradley*, 705 F. App'x at 417 (stating the *prima facie* case for hostile work environment as "(1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; and (4) the harassment unreasonably interfered with her work performance or created a hostile *or* offensive work environment that was severe and pervasive." (emphasis added)). The Supreme Court has also indicated that a plaintiff is not required to show that their work was negatively impacted, stating:

> A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of

Plaintiff must establish five elements for a hostile work environment claim: 1) she is a member of a protected class; 2) she was subjected to unwelcome racial harassment; 3) the harassment was based on race; 4) the harassment created a hostile work environment; and 5) the existence of employer liability. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999); *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14 C 02325, 2016 WL 2927983, *10 (M.D. Tenn. May 19, 2016). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). The harassment must be both objective and subjectively offensive to constitute a Title VII violation. *Id.* at 21–22. When looking at a hostile work environment claim, a court should employ a totality of the circumstances test. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (discussing *Harris*). "A court determines whether a hostile work environment has been created 'by looking at all the circumstances . . . includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Bradley v. Arwood*, 705 F. App'x 411, 422 (6th Cir. 2017) (quoting *Harris*, 510 U.S. at 23).

---

their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.

*Harris*, 510 U.S. at 22. Therefore, contrary to Defendant's argument, Plaintiff need prove only *either* that her work performance has suffered, *or* that the conduct at issue was severe or pervasive. The Court additionally notes that Defendant is correct that Plaintiff does not argue or present evidence that her work performance has suffered, and so the Court will solely analyze whether the conduct at issue was severe or pervasive. (Doc. No. 26 at 18 (seeming to concede that Plaintiff's work performance did not suffer, noting that the Court should not place "undue emphasis on a perceived lack of a negative effect on [Plaintiff's] ability to do her job")).

a. *The harassment was based on race (third element)*

"[T]he third element limits the scope of this analysis: only harassment based on the plaintiff's race may be considered." *Williams v. CSX Transp. Co.,* 643 F.3d 502, 511 (6th Cir. 2011) [*CSX Transp.*]. Therefore, a court should first determine what harassment was based on a plaintiff's race, and then ask whether that harassment in its totality was sufficiently severe or pervasive to create a jury question on this element. *Id.* "A plaintiff may prove that harassment was based on race by either (1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace. Harassment is based on race when it would not have occurred but for the plaintiff's race; the harassing conduct need not be overtly racist to qualify." *Id.* (internal citation omitted).

Therefore, the Court must first determine which events claimed by Plaintiff to be harassment are based on Plaintiff's race.[16] Defendant argues that the conduct of Miller-Brown, Midkiff, Vining, Homan, and Hall (described in the Factual Background section) did not have anything to do with Plaintiff's race. (Doc. No. 23 at 12). Plaintiff responds that:

> [Defendant] also insinuates that the acts that [Plaintiff] was subjected to were not racial in nature and would like the court to take the same approach. [Defendant] believed the incidents were not racial that it stated that [Plaintiff's] [sic] were not "grievable." [Plaintiff] was told by Sherry Brown, a known harasser of another Black hospital employee, that she was going to be harassed, she was accused of being a drug user and was actually given drug tests that she passed, was accused of giving a patient her phone number which can insinuate the stereotype that Black women are oversexed, was called a black cunt, she was falsely accused of being ghetto, a derogatory term used towards African Americans, called a black cunt, and was threatened with being killed, among other things.

_____

[16] As previously noted, Plaintiff only brings a claim for a *racially* hostile work environment. Some of the language and events, such as the use of the word "cunt" or the reference to Plaintiff's previous complaint, would appear to support claims for a sex-based or retaliatory hostile work environment. However, Plaintiff has brought neither of these claims, and so the Court will focus herein on what harassment was racial in nature (irrespective of whether it was gender-based or retaliatory in nature).

(Doc. No. 26 at 18 (internal citation omitted)).[17] But this argument omits any suggestion that there was a racial character to certain of the incidents discussed in the Factual Background section (such as the staring and other miscellaneous conduct), and instead focuses on 1) Miller-Brown's comment that she (Miller-Brown) was going to harass Plaintiff, 2) the accusation that she (Plaintiff) was using drugs, 3) the allegation that she (Plaintiff) gave her phone number to a patient,

---

[17] Plaintiff also claims that the death of the Black patient is tied to her hostile work environment claim because "the manner in which the employer treats an entire minority group is also determinative of a hostile work environment." (Doc. No. 26 at 10). As a result, Plaintiff attempts to claim the patient's death is an act of harassment towards her. The Sixth Circuit has explained that:

> [I]ncidents of harassment not directed at a plaintiff may be considered in evaluating a hostile work environment claim. *Meritor*, the Supreme Court case that first recognized such claims approvingly cited the Fifth Circuit's decision in *Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971), *disapproved of on other grounds, EEOC v. Shell Oil Co.*, 466 U.S. 54, 62 n.11, 104 S. Ct. 1621, 80 L.Ed.2d 41 (1984), which held that a "complainant could establish a Title VII violation by demonstrating that her employer created an offensive work environment for employees by giving discriminatory service to its Hispanic clientele." *Meritor*, 477 U.S. at 65–66, 106 S. Ct. 2399. Nearly three decades later, the Supreme Court in *Vance v. Ball State University*, 570 U.S. 421, 426, 133 S. Ct. 2434, 186 L.Ed.2d 565 (2013), continued to describe *Rogers* as a "leading case" for discriminatory work environment claims. Explicitly relying on *Rogers* and *Meritor*, this Court has held that a district court errs "when it deem[s] irrelevant the overwhelming evidence [the plaintiff] proffered documenting discriminatory conduct towards other African-American employees . . . ." *Jackson-Quanex*, 191 F.3d at 660.

*Strickland v. City of Detroit*, 995 F.3d 495, 506–07 (6th Cir. 2021). The Court is not persuaded by Plaintiff's reliance on this theory, as this case does not involve "overwhelming evidence" of discriminatory conduct against Black individuals as a group other than Plaintiff. Plaintiff seems to be relying on the death of the Black patient and a previous lawsuit (from approximately ten years ago) against Miller-Brown. However, this does not qualify as "overwhelming evidence" that Defendant treats all Black individuals differently. Plaintiff also stated in her declaration that Defendant "has a habit of mistreating Black patients like they do not matter." (Doc. No. 30-6 at ¶ 6). However, this assertion is unsupported by reference to any other events, and as the Court has noted, Plaintiff's subjective belief is not sufficient to create a genuine dispute of material fact for purposes of summary judgment. Even if the Court were to consider these two instances in its analysis, the Court would still find that Plaintiff has failed to show that the conduct was severe or pervasive, as these are two racially charged events that happened a decade apart.

4) the use of the term "black cunt" in the anonymous note, and 5) the use of the term "ghetto." The first two of these events do not appear to have any connection to Plaintiff's race, and Plaintiff does not make any connection between them and her race. Plaintiff asserts that the incident involving her phone number "can insinuate the stereotype that Black women are oversexed." But it is sheer speculation that the comment insinuated any such thing or was made because of any such stereotype. Indeed, even understanding that it must at this stage draw inferences in Plaintiff's favor, the Court cannot embrace this speculation, especially since it does not strike the Court as likely to be accurate.[18] Therefore, the Court is unpersuaded that the first three instances are connected to Plaintiff's race.

Additionally, Plaintiff seems to imply that because the events recounted in the Factual Background section occurred after she reported the death of the Black patient, they are all racial in nature (presumably because these incidents targeting her, a Black individual, occurred after she made a complaint about the treatment of the Black patient). Plaintiff told Kennedy she thought that the incidents were racially motivated and that this belief "stems from the fact that all of the named accusers are white." (Doc. No. 24-3 at 11–12). In her deposition, Plaintiff stated that she believed the harassment to be racially motivated because "they're all white, I'm black." (Doc. No. 24-1 at 67).[19] However, Plaintiff's perception (a perception which appears to be based *solely* on Plaintiff's race being different than the other employees' race(s)) that it was race that motivated these events

_____

[18] The Court perceives that providing a phone number to another person, with amorous aspirations, is a longstanding and well-known cultural motif, as well as an actual practice in which some people have been known to engage. This motif and practice, the Court perceives, is by no means associated with Plaintiff's race in particular; if anything, it is well known not to be race-specific.

[19] Additionally, Plaintiff has provided no evidence or explanation for how the chronology of the events (her harassment occurring after the death of the Black patient) makes them racially motivated, and instead Plaintiff also testified that she believed that the events were a form of retaliation. (Doc. No. 23 at 13; Doc. No. 24-1 at 67).

by itself is not sufficient to show that the other employees' actions were based on race. *Ector v. Potter*, No. 1:08-CV-726, 2010 WL 1433311, at *9 (S.D. Ohio Apr. 5, 2010) ("Here, the fact that [the plaintiff], an African-American, experienced conflicts with Caucasian supervisors, is insufficient to establish that these conflicts were based on race.") (citing *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000) ("[The] [l]aw does not blindly ascribe to race all personal conflicts between individuals of different races . . . Instead, legally sufficient evidence is required to transform an ordinary conflict . . . into an actionable claim of discrimination.")). Plaintiff's subjective belief or perception of whether events were racially charged likewise cannot create a genuine dispute of material fact. *See e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("[R]umors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law."); *Sperber v. Nicholson*, 342 F. App'x 131, 132 (6th Cir. 2009) ("[S]elf-serving innuendo and speculation . . . does not suffice to survive summary judgment.").

Therefore, the Court finds that the only events that are racially motivated are: 1) Midkiff complaining that Plaintiff was acting "ghetto"[20]; and 2) the anonymous note, which specifically referenced the death of the Black patient and called Plaintiff a "black cunt."[21] *See CSX Transp.*, 643 F.3d at 511 (finding that racist language indicates that an event is racially motivated).

___

[20] Midkiff's complaint regarding Plaintiff acting "ghetto" was coupled with the complaint that Plaintiff smelled like weed and was loud. (Doc. No. 23 at 7). To say the least, white persons have not infrequently been known to use (and "smell like" weed (marijuana)), and perhaps more to the point, unquestionably there are stereotypes of certain kinds of white persons who are associated both with being loud and with using marijuana. Thus, these complaints appear to be race-neutral, and Plaintiff makes no argument that Midkiff complaining of either of these things was tied to her (Plaintiff's) race; thus, the Court does not find that Midkiff's complaint about Plaintiff smelling like weed and being loud was racially motivated.

[21] Defendant notes that, in one instance, Miller-Brown asked Plaintiff, whose father is from Nigeria, to speak in her "African accent." (Doc. No. 23 at 5 n.3). Plaintiff apparently believed this

b. *Severe or pervasive*[22]

i. Severe

Based on the above analysis, the only two events that support Plaintiff's claim for hostile work environment based on race are: 1) Midkiff complaining that Plaintiff was acting "ghetto;" and 2) the anonymous note, which specifically referenced the death of the Black patient, called Plaintiff a "stupid black cunt," and threatened Plaintiff to "back off" and "[b]e careful with the shit youre stirring up so you don't endup like the African man." (Doc. No. 24-5). Defendant argues that these instances do not rise to the level of "severe" conduct.

"[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *CSX Transp.*, 643 F.3d at 512 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "Thus, occasional offensive utterances do not rise to the level required to create a hostile work environment because, '[t]o hold otherwise would risk changing Title VII into a code of workplace civility.'" *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008) (quoting *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017)). "Whether conduct is severe or pervasive is 'quintessentially a question of fact.'" *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)).

---

to be a joke and was not offended. (*Id.*). Plaintiff does not attempt to argue that this event contributed to the harassment or otherwise supports her hostile work environment claim.

[22] The Court emphasizes that a plaintiff is required to show "severity *or* pervasiveness." *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 n.2 (6th Cir. 2012) (discussing the confusion in the case law and stating that "a disjunctive test, *i.e.*, 'severe or pervasive,' is proper"). Thus, conduct that is either severe or pervasive is sufficient to satisfy this element of Plaintiff's indirect-evidence *prima facie* case.

But to say that this is a question of fact is not to say that Plaintiff is able to raise a *genuine issue* on this factual question. As discussed above, Plaintiff bears the burden of showing that the harassment in its totality was sufficiently "severe or pervasive" to create a jury question on this element of Plaintiff's hostile work environment claim. Defendant argues that Plaintiff was not subjected to severe harassment because "Plaintiff admits that none of her alleged harassers made any racially charged comments toward or around her and Plaintiff cannot attribute any racially charged comments to any of her alleged harassers." (Doc. No. 23 at 17). Defendant cites to Plaintiff's deposition in support of the contention that the anonymous note was isolated, and no other incidents occurred after September 2018, and states that even if we accept all of Plaintiff's allegations as true, they do not collectively meet the "high burden" of establishing a hostile work environment. (*Id*. at 16–18). Thus, the Court finds that Defendant has properly shifted the burden to Plaintiff to raise a genuine issue as to  whether the harassment was "severe."

Plaintiff has cited no case law indicating that the anonymous note alone should dictate that the Court find the conduct directed at Plaintiff to be "severe." As noted, the Sixth Circuit does hold that isolated incidents, if sufficiently severe, can form the basis for a hostile work environment claim. However, the Sixth Circuit generally has found isolated incidents sufficiently severe only if they involve physical invasion or the use of the "n-word." *E.g.*, *Ault v. Oberlin Coll.*, 620 F. App'x 395, 403 (6th Cir. 2015) (finding that a supervisor pressing against the plaintiff so she could feel his penis, physically positioning himself so she could not move, and ignoring her repeated requests to stop, was "severe"); *Jordan v. Mathews Nissan, Inc.*, No. 3:18-CV-01233, 2021 WL 1967562, at *33 (M.D. Tenn. May 17, 2021) (Richardson, J.) (collecting cases and explaining that the use of the "n-word," even once, was more than a "mere offensive utterance").

True, in one case, the Sixth Circuit upheld the district court's denial of a motion to dismiss because the sexual harassment the plaintiff faced included a threat of physical harm that made the plaintiff fear for her life. *Hickman v. Laskodi*, 45 F. App'x 451, 455 (6th Cir. 2002). However, the Court is not persuaded that this case, decided in the motion to dismiss context, indicates that the Court necessarily must accept an anonymous threatening note as "severe," particularly when the Sixth Circuit has regularly found that "[t]hose cases in which the sexually harassing conduct consisted of a single minor incident of offensive touching have uniformly concluded that such an incident is not sufficiently severe to give rise to a hostile work environment." *Carter v. Youth Opportunity Invs., LLC*, No. 3:19-CV-0177, 2019 WL 1491739, at *3 (M.D. Tenn. Apr. 4, 2019) (collecting Sixth Circuit cases)); *Stanley v. U.S. Enrichment Corp.*, No. 2:07-CV-656, 2009 WL 88623, at *3 (S.D. Ohio Jan. 12, 2009) ("Defendant correctly notes that Plaintiff's isolated incident of allegedly being sexually assaulted once does not rise to the level of objectively severe and pervasive harassment that affected the terms, conditions, or privileges of her employment."); *Mann v. Navicor Grp., LLC*, 488 F. App'x 994, 1000 (6th Cir. 2012) ("[Plaintiff] complains about four discrete and isolated incidents, only one of which involved any physical contact. This evidence is insufficient to establish [Plaintiff's] claim."); *Scarborough v. Brown Grp., Inc.*, 972 F. Supp. 1112, 1119 (W.D. Tenn. 1997) (granting summary judgment when plaintiff only pointed to one incident of her posterior being touched or grabbed).

Many other courts have also found a single instance of a threat of violence insufficient to create "severe" conduct for purposes of a hostile work environment claim. *See e.g.*, *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 433 (6th Cir. 2014) (upholding summary judgment finding that supervisor making a noose out of a phone wire behind the plaintiff's seat, and another employee stating, "[a]re you fixing to hang someone?" was not sufficiently severe or pervasive to

support hostile work environment claim); *Artis v. Finishing Brands Holdings, Inc.*, 93 F. Supp. 3d 864, 895 (W.D. Tenn. 2015), *aff'd in part, rev'd in part on other grounds*, 639 F. App'x 313 (6th Cir. 2016) (finding chicken hanging from noose not to be sufficiently severe for hostile work environment claim, even when paired with a few other racially charged incidents); *Sargent v. Sw. Airlines*, No. 3:11-0715, 2012 WL 6186497, at *2 (M.D. Tenn. Oct. 30, 2012), *report and recommendation adopted*, No. 3:11-CV-00715, 2012 WL 6186463 (M.D. Tenn. Dec. 12, 2012) ("The noose incident alleged by plaintiff was an isolated single occurrence that cannot be regarded as sufficiently severe or pervasive to establish a claim on which relief may be granted[.]"); *Bozeman v. Per-Se Techs., Inc.*, 456 F. Supp. 2d 1282, 1345-46 (N.D. Ga. 2006) (finding that two isolated physical threats, including "that [the plaintiff] needed to be careful and keep his mouth shut," "the plaintiff could ruin his career or that [the other employee] could ruin the plaintiff's career, that he needed to be quiet or he would regret it," and a reference to "whipping his ass" were not severe or pervasive enough to constitute actionable harassment under Title VII at summary judgment stage); *Banford v. Bd. of Regents of the Univ. of Minnesota*, No. 15-CV-3740 (PJS/LIB), 2021 WL 1575639, at *5 (D. Minn. Apr. 22, 2021) (finding that an isolated threat to punch the plaintiff in the face, which the plaintiff heard about later second-hand, was insufficiently severe to constitute a Title VII violation at summary judgment stage); *Adams v. High Purity Sys. Inc.*, No. 1:09CV354 (GBL), 2009 WL 2391939, at *4 (E.D. Va. July 2, 2009), *aff'd*, 382 F. App'x 269 (4th Cir. 2010) (finding that a "single comment about paying [Plaintiff's] 'white ass back,' while offensive, was an isolated threat; nothing in the Complaint suggests that [Defendant] made similar comments afterwards or followed up on the threat with any physical action[]" and thus granting summary judgment on the plaintiff's hostile work environment claim because the conduct was not "sufficiently severe or pervasive harassment"); *but cf. Curry v. SBC Commc'ns, Inc.*, 669 F. Supp.

2d 805, 835 (E.D. Mich. 2009) (noting that "[i]t is true that the noose by itself is not as compelling a case for a hostile work environment as it would be with other racially-charged comments," but ultimately finding a genuine issue of material fact based on the totality of the circumstances).

Here, the single anonymous note contained an isolated threat. While the note contained an offensive word, it was not a racial slur and certainly was not as severe as "the n word." This threat was not followed up on, and the record reflects no similar comments made after Plaintiff's receipt of the note. Thus, while the note was (to say the very least) troubling, it cannot be regarded as sufficiently severe as to sustain a hostile work environment claim.

Further, Midkiff's complaint that Plaintiff was acting "ghetto," while certainly condemnable as unfair and insensitive, resembles a "mere offensive utterance" more than it resembles "physically threatening or humiliating" language. *CSX Transp.*, 643 F.3d at 513 (finding that comments calling plaintiffs "monkeys" and saying that Black people "should go back where they came from" more closely resembled "mere offensive utterance[s]" than conduct that is "physically threatening or humiliating" and therefore were not sufficiently "severe" to create a jury question on plaintiffs' racially hostile work environment claim). *See also, e.g.*, *Johnson v. Box USA Grp., Inc.*, 208 F. Supp. 2d 737, 743 (W.D. Ky. 2002) (use of "boy" and "ghetto Kool Aid" not sufficient for hostile work environment claim). Thus, the Court finds the use of the term "ghetto" in a complaint regarding Plaintiff insufficient to create "severe" conduct for purposes of a hostile work environment claim.

Therefore, viewed together, the Court does not find the (offensive) anonymous note and the (offensive) "ghetto" comment "severe" as would be sufficient to support a hostile work environment claim.

The Court additionally finds that the conduct complained of is not "pervasive" as alternatively would be sufficient to support a hostile work environment claim.

The conduct involved approximately fourteen incidents total, over a period of approximately six to eight months.[23] As noted above, however, only two of the incidents had some connection to Plaintiff's race. Two relevant incidents in a period of six to eight months is not enough to constitute "pervasive" conduct for purposes of a hostile work environment based on race. *See e.g.*, *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (upholding summary judgment ruling that found "three relatively isolated incidents over a period of approximately two and a half years" could not be construed as pervasive enough for a hostile work environment claim); *Gomes v. Prime Design, Inc.*, 85 F. App'x 421, 423 (6th Cir. 2003) (upholding grant of summary judgment because two isolated incidents of harassment over six months could not be considered pervasive); *Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp. 2d 814, 821 (M.D. Tenn. 2011) (finding, at summary judgment stage, seven incidents over the course of five months "plainly insufficient" to show severe or pervasive conduct).

Therefore, for the reasons discussed, the Court will grant summary judgment for Defendant on Plaintiff's claims based on a racially hostile work environment under Title VII and the THRA.[24]

## 2. Retaliation

---

[23] Plaintiff states that the alleged harassment occurred over an 8-month period. (Doc. No. 26 at 14). Defendant states that the alleged harassment occurred over a 6-month period. (Doc. No. 23 at 16). The use of the term "ghetto" was in May 2018. (Doc. No. 23 at 7–8, 15–16). It is unclear when the anonymous note was received by Plaintiff. According to Defendant's Memorandum in Support of the Motion, such receipt was in October 2018; according to Plaintiff's Response and declaration such receipt was on November 25, 2018; and according to Plaintiff's deposition such receipt was in the summer of 2018. (Doc. No. 23 at 10; Doc. No. 26 at 4; Doc. No. 24-1 at 78).

[24] As a result, the Court need not reach the issue of employer liability.

Defendant argues that Plaintiff's retaliation claim fails because 1) she did not sue with 90 days following her notice of right to sue letter, 2) she did not suffer an adverse employment action, and 3) she did not plead a retaliation claim, and instead only brought up such a claim in her deposition. (Doc. No. 23 at 20–21). Plaintiff never mentions a retaliation claim in her Complaint or her Response. The Court therefore finds such a claim, if indeed Plaintiff ever intended to bring one, to be abandoned and thus subject to summary judgment. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

C. Sanctions

In her Response, Plaintiff requests that the Motion be denied as a sanction due to Defendant's conduct during discovery. (Doc. No. 26 at 23). Plaintiff contends that Defendant did not answer certain interrogatories sufficiently and did not provide Plaintiff with certain information, and instead filed that information in support of its Motion.[25] (*Id.* at 23–24).

The Court finds that Plaintiff's request for sanctions is inappropriately brought in her Response. Plaintiff instead should have filed a separate motion for sanctions or a discovery dispute earlier in this litigation. This alone counsels against imposing the sanction requested by Plaintiff.

Additionally, Plaintiff's request for sanctions is substantively flawed. Plaintiff is not specific regarding which particular evidence she finds inappropriate, and it appears from the record that most of the evidence relied on by Defendant in its Motion would have been provided to (or been provided by) Plaintiff during this litigation. The only five exhibits attached to Defendant's

---

[25] Plaintiff includes the contested interrogatory answers, which were not supplemented, in her Response. (Doc. No. 26 at 24–26).

Statement of Facts are: 1) Plaintiff's deposition excerpts, 2) Plaintiff's EEOC charge, 3) emails between Plaintiff and employees of Defendant, 4) Plaintiff's grievance, and 5) the anonymous note. (Doc. No. 24). Plaintiff has given the Court no specific reason to believe that any of these five items were not exchanged during discovery (or otherwise already in the possession of Plaintiff). Additionally, Defendant filed a declaration with information regarding its response to Plaintiff's Complaint and disciplinary documents pertaining to some of the employees referenced in the Complaint (which presumably Plaintiff may not have been in receipt of until the present Motion was filed), but the Court has not relied on this information, as the Court has not reached the issue of employer liability. (Doc. No. 25).

Therefore, the Court declines Plaintiff's request to deny the Motion as a sanction against Defendant.

## CONCLUSION

For the reasons discussed herein, the Court will grant the Motion (Doc. No. 22). The Court will deny the Motion to Strike (Doc. No. 34).

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE